Ryan L. Gentile, Esq.
Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike - Suite 100
Floral Park, NY 11001
Tel: 201-873-7675
Attorney for Plaintiff, Mosharraf M. Hossain
on behalf of himself and all others similarly situated

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------X
Mosharraf M. Hossain, on behalf of himself
and all others similarly situated,

                    Plaintiffs,

    v.

Midland Credit Management, Inc.

         Defendant.
--------------------------------------------------------X

**CLASS ACTION COMPLAINT**

Plaintiff, by and through his counsel, Ryan Gentile, Esq., as and for his complaint against Defendant, on behalf of himself and pursuant to Rule 23 of the Federal Rules of Civil Procedure all others similarly situated, alleges as follows:

## INTRODUCTION

1. Plaintiff, on his own behalf and on behalf of the class he seeks to represent, brings this action to secure redress for the debt collection practices utilized by Midland Credit Management Inc. ("MCM" or "Defendant") in connection with their attempts to collect alleged debts from Plaintiff and others similarly situated.

2. Plaintiff alleges that Defendant's collection practices violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA")

1

3. The FDCPA broadly prohibits conduct which harasses, oppresses or abuses any debtor; any false, deceptive or misleading statements in connection with the collection of a debt; unfair or unconscionable collection methods; and requires certain disclosures. *See generally* 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

4. The FDCPA is generally characterized as a "strict liability" statute because "it imposes liability without proof of an intentional violation." Glover v. FDIC, 698 F.3d 139 (3d. Cir. 2012) (citing Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 & n. 7 (3d Cir. 2011).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's FDCPA claim pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

6. Venue and personal jurisdiction in this District are proper because:
    a. The acts giving rise to this lawsuit occurred within this District; and
    b. Defendant does business within this District.

## PARTIES

7. Plaintiff, Mosharraf M. Hossain is an individual natural person who at all relevant times resided in the City of Teaneck, County of Bergen, State of New Jersey.

8. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

9. MCM is a Kansas Corporation with its principal place of business located at 350 Camino De La Reina, Suite 100 San Diego, CA 92108.

10. MCM has no notable business purpose aside from purchasing and collecting consumer debt at Encore Capital Group, Inc's direction, and therefore their "principal purpose" is the collection of consumer debt.

11. The principal purpose of MCM is the collection of debts using the mail and telephone.

12. MCM is a purchaser of defaulted debt.

13. Part of MCM's business model is to pay less than ten cents on the dollar for a defaulted debt and then seek to collect the full amount.

14. Part of MCM's collection practices includes filing lawsuits against New Jersey residents seeking to collect debts that MCM allegedly purchased after the debts went into default.

15. Debt collection is the principal purpose of MCM's business.

16. MCM has no principal purpose other than the collection of debts.

17. MCM does not offer or extend credit, they only purchase defaulted debt and then attempt to collect said debt and/or attempt to collect debts owed to another entity.

18. MCM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

19. MCM is registered as a "debt collector" with the State of New Jersey.

20. MCM is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTS

21. Sometime prior to October 8, 2019, Plaintiff allegedly incurred a debt to Capital One ("Capital One") related to a personal credit card account with an account number ending in 5255 (the "Debt").

22. The Debt arose out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes,

namely fees emanating from a personal credit card account in Plaintiff's name that was issued by Capital One.

23. The Debt arose out of a credit card account which Plaintiff opened and used for his personal use.

24. Plaintiff's credit card account that was issued by Capital One was neither opened nor used by Plaintiff for business purposes.

25. Plaintiff's personal credit card account Debt to Capital One is a "debt" as defined by 15 U.S.C. § 1692a(5).

26. Sometime after the incurrence of the Debt, but before the initiation of this action, Plaintiff was alleged to have fallen behind on payments owed on the alleged Debt.

27. MCM contends that the alleged Debt went into default because of non-payment.

28. After the alleged Debt went into default because of non-payment, the Debt was allegedly sold by Capital One to MCM.

29. The Debt was in default when it was allegedly purchased by MCM.

30. MCM claims that they purchased the Debt and are now the entity to whom the Debt is owed.

31. MCM contends that the Debt is in default.

32. At all times relevant hereto, MCM acted in an attempt to collect the Debt.

33. On or about December 5, 2019, MCM mailed or caused to be mailed a letter to Plaintiff (the "Letter"). (Annexed and attached hereto as Exhibit A is a copy of the Letter dated December 5, 2019 that MCM mailed or caused to be mailed to Plaintiff, except the undersigned counsel has in accordance with Fed. R. Civ. P. 5.2 redacted the financial account numbers and Plaintiff's street address to protect his privacy)

4

34. MCM mailed the Letter as a part of their efforts to collect the Debt.

35. The Letter was mailed in a yellow envelope, encased in a white envelope. The yellow envelope stated "TIME SENSITIVE DOCUMENT" on it and was visible through a glassine window in the white envelope to anyone who viewed the envelope.

36. The envelope along with the language was intended as a method to communicate with the Plaintiff and resulted in creating a false sense of urgency.

37. Plaintiff received the Letter in the mail.

38. Plaintiff read the Letter upon receipt of it in the mail.

39. The Letter was sent in connection with the collection of the Debt.

40. The Letter seeks to collect the Debt.

41. The Letter conveyed information regarding the Debt including the Current Balance, MCM Account number, and a request for payment.

42. The Letter is a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

43. The Letter is the first written letter or notice that MCM sent to Plaintiff regarding the Debt.

44. The Letter attached as <u>Exhibit A</u> states in relevant part on the first page under the "Account at a Glance" heading:

>       _____
> **Reply By**
> **1/19/2020**
> **Call 877-452-7959**
> Mon-Fri: 8am – Midnight ET
> Sat-Sun: 8am – 7:30pm ET

45. The wording of the Letter referenced in the preceding paragraph is separated from other wording in the Letter by a solid line that separates it from other parts of the Letter and places the wording in its own box.

46. The Letter does not specify anything Plaintiff needed to reply to by January 19, 2020.

47. The Letter did not make any settlement offers that were due by January 19, 2020.

48. The January 19, 2020 "Reply By" date in the Letter is an artificial deadline.

49. January 19, 2020 is more than thirty (30) days from the date Plaintiff received the Letter in the mail.

50. MCM's collection practice is a high-volume practice.

51. MCM's debt collection practice is largely automated and utilizes standardized form letters.

52. Documents in the form represented by Exhibit A are regularly sent by MCM to collect debts.

53. The Letter is a standardized form letter.

54. Exhibit A is a letter that is generated by MCM by imputing a consumer's information into a computer program which then prints a letter in the form of Exhibit A to Plaintiff's Complaint with that consumer's information contained therein.

55. MCM mailed or caused to be mailed letters in the form of Exhibit A in envelopes marked "TIME SENSITIVE DOCUMENT" over the course of the past year to hundreds of New Jersey consumers from whom MCM attempted to collect a consumer debt originally owed to Capital One.

## CLAIMS FOR RELIEF

## COUNT I

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

56. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

57. The conduct of the Defendant in this case violates 15 U.S.C. §§ 1692 and 1692e(10), 1692f, 1692f(8), 1692g, 1692g(b).

58. The FDCPA at §1692f and §1692(f)(8) provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section
>
>> (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

59. Defendant violated 15 U.S.C. §1692f and §1692(f)(8) by sending the Letter attached as Exhibit A in an envelope which stated "TIME SENSITIVE DOCUMENT" on it. *See* Douglass v. Convergent Outsourcing, 2014 WL 4235570 (3rd Cir. Aug. 28, 2014); Preston v. Midland Credit Management, Inc. 948 F.3d 772 (7th Cir. Jan 21, 2020).

60. 15 U.S.C. §1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

61. 15 U.S.C. §1692g(b) provides

**(b) Disputed debts**

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period

> referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

62. Collection letters and/or notices, such as <u>Exhibit A</u> sent by Defendant to Plaintiff, are to be evaluated by the objective standard of the "least sophisticated consumer."

63. The Letter violates 15 U.S.C. § 1692g(b) because it instructs Plaintiff to "Reply By 1/19/2020", and this language overshadows the validation notice in the same letter. The Letter does not specify what exactly Plaintiff needs to reply to by January 19, 2020, nor is the language "Reply By 1/19/2020" attached to any other part of the Letter because the language in question is in its own box in the Letter. In the absence of anything specific MCM was instructing Plaintiff to reply to by January 19, 2020 (such as, for example, a settlement offer or other deadline for a certain action), the reasonable inference is that MCM was instructing Plaintiff to respond to the Letter itself by January 19, 2020. Any reasonable person who receives a letter telling them to reply by a certain date, but does not detail or state anything specific to reply to by the date in question, would naturally think that the date in question would be the deadline to respond to the letter itself. The Letter contained the validation notices required by § 1692g on the back of the Letter and the "Reply By 1/19/2020" language was on the front of the Letter. Pursuant to § 1692g, Plaintiff had thirty days from receiving the Letter to dispute the Debt and/or request verification of it. January 19, 2020 is more than 30 days from the date Plaintiff received the Letter. Therefore, MCM's instruction in the Letter to "Reply By 1/19/2020" overshadowed the debt validation notice contained on the back of the same letter because the language specifically instructed Plaintiff to reply to the Letter by January 19, 2020,

8

which is a date that is more than 30 days from the date Plaintiff received the Letter. If Plaintiff or any other consumer followed MCM's instructions in the Letter and replied to said letter by invoking the validation notice rights disclosed on the back of the Letter on January 19, 2020, they would have lost their rights under § 1692g because the dispute or request for verification of the debt would not have been timely.

64. The Letter also violates 15 U.S.C. § 1692e(10) because it is confusing and misleading. For example, suppose a consumer received the Letter on December 8, 2019. Pursuant to § 1692g, that consumer would have until January 7, 2020 to dispute the debt and/or request verification of the debt. However, the front of the Letter *specifically instructs them* that they can reply to the Letter by January 19, 2020. Again, there is nothing the Letter instructs a consumer to reply to by January 19, 2020, so the assumption is that the January 19th date is the date to reply to the Letter itself. Any reasonable consumer could then follow the Letter's instructions and wait until January 19, 2020 to reply to the Letter, and thus lose their rights under § 1692g, which would have expired on January 7, 2020. The Letter is therefore open to multiple interpretations, specifically as to when to respond to the letter to invoke one's rights under § 1692g, and therefore the Letter violates § 1692e(10).

65. The Letter also violates 15 U.S.C. § 1692e because the January 19, 2020 deadline is an artificial one. There is nothing the Letter instructs a consumer to respond to by January 19, 2020. For example, the Letter contains no settlement offer or any other offer or thing or deadline that is due or occurs on or by January 19, 2020. The January 19, 2020 deadline is simply an artificial deadline meant to make a consumer think there is some negative consequence that will occur if the debt is not paid by January 19, 2020. The

January 19, 2020 deadline is not a real deadline but rather an artificial one that means nothing, and is therefore deceptive and misleading.

66. The violations of the FDCPA described herein constitute *per se* violations.

67. Plaintiff has alleged a particularized injury because the Letter was mailed and directed to him.

68. Plaintiff has alleged a concrete harm because the FDCPA creates a substantive right to be free from abusive debt communications and Defendant's violations of the FDCPA resulted in concrete harm to Plaintiff.

69. Defendant is liable to the Plaintiff and the proposed class pursuant to 15 U.S.C. § 1692k because of the above FDCPA violations.

## CLASS ALLEGATIONS

70. Plaintiff incorporates by reference all the above paragraphs as though fully stated herein.

71. This action is brought as a class action. Plaintiff brings this action on behalf of himself and on behalf of the following class of persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

72. The Class is initially defined as (a) all consumers (b) with a New Jersey address (c) to whom MCM sent an initial collection letter which is materially identical or substantially similar to Letter attached as Exhibit A to the Complaint (d) in an envelope which stated "TIME SENSITITIVE DOCUMENT" on it (e) which letter sought to collect a debt originally owed to Capital One (f) which letter was not returned as undeliverable (g) on or after a date one year prior to the filing of this action; and (h) which letter included the alleged conduct and practices described herein.

73. The class definition above may be subsequently modified or refined in an amended complaint or in any motion for class certification.

74. The proposed class specifically excludes the United States of America, the states of the Third Circuit, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Third Circuit and the United States Supreme Court.

75. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

   i. **Numerosity**: The Plaintiff is informed and believes and on that basis alleges, that the class defined above is so numerous that joinder of all members would be impracticable. Upon information and belief, based on the fact that the Complaint involves form collection letters, there are at least 40 members of the class. The exact number of class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery. The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by the Defendant.

   ii. **Common Questions Predominate**: There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) The existence of the

Defendant's identical conduct particular to the matter at issue; (b) Defendant's violations of the FDCPA, specifically 15 U.S.C. §1692e, 15 U.S.C. §1692f, and 15 U.S.C. §1692g; (c) The availability of statutory penalties; and (d) Attorneys' fees and costs.

iii. **Typicality**: The claims of the Plaintiff are typical of those of the class they seek to represent. The claims of the Plaintiff and the members of the class originate from the same conduct, practice, and procedure, on the part of the Defendant. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts. Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed class. Plaintiff asserts identical claims and seeks identical relief on behalf of the unnamed class members.

iv. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the class and has no interest adverse to or which directly and irrevocably conflicts with the interests of other members of the class. Plaintiff is willing and prepared to serve this Court and the proposed class. The interests of the Plaintiff are co-extensive with and not antagonistic to those of the absent class members. Plaintiff has retained the services of counsel who are experienced in FDCPA litigation and will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiff and all absent class members. Neither the Plaintiff nor their counsel have any

interests which might cause them to not vigorously pursue the instant class action lawsuit.

v. **Superiority**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members of the class would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Furthermore, a class action is superior for the fair and efficient adjudication of this matter because individual actions are not economically feasible, members of the class are likely to be unaware of their rights or that they were violated, and Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

**WHEREFORE**, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

1. An order certifying that Count I may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the class previously set forth and defined above.
2. Adjudging that Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, 1692f(8), 1692g, and 1692g(b).
3. An award of statutory damages for Plaintiff and the class members pursuant to 15 U.S.C. §1692k;

4. Attorneys' fees, litigation expenses and costs of suit pursuant to 15 U.S.C. §1692k; and

5. Such other and further relief as the Court deems proper.

Dated: Floral Park, New York
December 5, 2020

By: /s/ Ryan Gentile
_____
Ryan Gentile, Esq.
*Attorney for Plaintiff*
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
Tel: (201) 873-7675
Fax: (516) 305-5566
rlg@lawgmf.com